Schreifer v. City of Auburn.

FRED SCHREIFER ET AL., APPELLANTS, V. CITY of AUBURN ET AL., APPELLEES.

FILED APRIL 21, 1923. No. 22773.

1. **Municipal Corporations**: PAVING: SPECIAL ASSESSMENTS: VALIDITY. A special assessment to pay the cost of paving is not invalid merely because the surveys and estimates to be made by the city engineer under the provisions of section 5011, Rev. St. 1913, were not made by the regularly elected engineer, but by a firm of expert engineers employed specially to render that service, where the elected city engineer was not competent to perform it.

2. ———: PAVING DISTRICTS. The city council of a city of the second class is not required to establish by ordinance a grade upon a street forming a part of a paving district as a condition precedent to the establishment of such district.

3. ———: ORDINANCES: AMENDMENT. Section 4443, Comp. St. 1922, creates no inhibition against the amendment of an ordinance enacted by the mayor and city council of a city, notwithstanding the submission of such ordinance to a vote of the electors of the city.

4. ———: PAVING: SPECIAL ASSESSMENTS: VALIDITY. A tax for special benefits arising from the laying of pavement on the street of a duly established paving district is not void merely because the city council entered into a single contract with an engineering firm under which it did the necessary engineering work and made the estimates of the cost of paving in the several districts, where the compensation for such service was based upon a percentage cost of the improvement and the property improved in each district was charged its proper share on the basis of the cost of the improvement.

APPEAL from the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Sterling F. Mutz,* for appellants.

*H. A. Lambert* and *Ernest F. Armstrong, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY and GOOD, JJ.

MORRISSEY, C. J.

The city of Auburn, a city of the second class, by several separate ordinances created four paving districts and caused the several districts to be paved. The appellants in this action, who are property owners within district No. 7, filed objections to the contemplated improvement before the contracts were let or the work was done, and, when the city council convened as a board of equalization for the purpose of making special assessments against the property within the improved district, they appeared and protested against the levying of assessments upon their several properties. Feeling aggrieved by the several orders of the city council acting as a board of equalization, they prosecuted error to the district court, where the findings and orders of the city council were approved. From the judgment of the district court they have appealed. Appeals have also been taken which involve other districts and the parties have to a great extent undertaken to consolidate the issues presented for review.

1. At the time the improvement was undertaken the city was without an engineer competent to make an estimate of the cost of the improvement, therefore the city employed a firm of expert engineers for that purpose, and an estimate in due form was made by this firm.

It is argued that this was not a compliance with the statute, section 5011, Rev. St. 1913. In *Diederich v. City of Red Cloud,* 103 Neb. 688, substantially the same question was presented. That was an injunction action where the proceedings were collaterally attacked, but the discussion on the sufficiency of the estimate made by

engineers especially employed for the purpose is illuminating. The court said:

"The evidence shows that in this case, as in other towns of this class, the city engineer is chosen without reference to his qualifications to make a proper estimate of the items of cost of extensive street paving. The city engineer was a witness upon the trial, and his evidence shows that he was not qualified, and did not consider himself qualified, to make an estimate of such extensive street paving, and that the city council, with his knowledge and consent, employed competent engineers who did make the estimate. It does not appear that any objection was made to the estimate on the ground that it was not made by the city engineer until after the paving was done. While the letter of the statute is that the city engineer shall make estimates, the preceding direct statement of the improvements for which the city engineer shall make estimates might indicate that the legislature did not have extensive paving in towns of this class in view, for which it would be necessary to employ more competent engineers. When the statute was enacted in 1879, neither the legislature nor any one else contemplated that towns of this class would do extensive paving. If the present situation had been contemplated by the legislature, we may well suppose, in view of the provisions of this comprehensive act, that the language of this section would have been more explicit. Under all of the circumstances, we cannot conclude that it was the intention of the legislature to prevent the city council from securing the necessary services of competent engineers under such conditions as these."

2.  "There was no ordinance establishing the grade or repealing prior ordinances establishing grade." A sufficient answer to this statement is that there is no statute pointed out which made it incumbent upon the city council to establish a grade by ordinance as a condition precedent to the organization of the paving district. The statute confers authority upon the city council to establish grades, but it does not require the exercise of

such power as a condition precedent to the establishment of the paving district.

3. "An ordinance cannot be changed when submitted under the referendum until after one year." After the passage of the ordinance creating paving district No. 7, dissatisfied parties caused it to be submitted to a referendum vote, where it received the approval of a majority of those voting thereon. The paving district as created by the ordinance extended from the north line of Twentieth and O streets to the south line of Twenty-ninth street at Twenty-ninth and O streets, and extended west along Twenty-ninth street about two blocks. After the referendum vote had been taken the city council by resolution excluded from the operation of the ordinance the paving of that part of Twenty-ninth street which had been included in the district, and the paving was subsequently laid on O street only. The council made changes in the work on O street. The ordinance originally provided for paving the roadway 50 feet in width. On petition of the property owners the paved roadway was reduced to 30 feet in width between Twenty-first street and Twenty-second street. Certain changes were also made relating to sidewalk construction. It is claimed that under section 4443, Comp. St. 1922, an ordinance cannot be changed after its submission to a referendum vote until the expiration of one year from and after the vote has been taken. We do not so construe the statute. It reads: "The mayor and city council shall have no power to enact a law which shall in any manner alter, modify, impair or render nugatory ordinances which have been enacted by a direct vote of the voters of such city under the provisions of this article, except by a yea and nay vote of two-thirds of the city council: Provided, however, no such vote shall be taken within one year from the time of its enactment." It will be seen that this relates to ordinances "which have been enacted by a direct vote of the voters." It does not purport to cover ordinances enacted by the mayor and

city council and referred to the voters for their rejection or approval under the provisions of the statute permitting a referendum.

4. It is said that following the enactment of the several ordinances which created paving districts 4, 5, 6 and 7 there was but a single contract with the engineering firm and that it covered work in the four districts, and that there was but one contract for laying the paving in the four districts; that the estimate of costs upon which the city based its advertisements for bids was made jointly as to all districts; and that the various incidental items entering into the improvements made in the several districts were consolidated, and later prorated according to the front footage in each district, and that this procedure renders the whole levy invalid. In support of this contention, it is argued that the engineering work was more difficult in one district than in another and that necessarily the charge made by the engineers might have been less in a given district had the contract been restricted to the work to be done in the district calling for the less difficult work. It is claimed also that by calling for engineers who were able to do the work in the four districts all engineers were excluded except those who were able to handle the larger projects; that if the city had sought separate engineers for each district it might have procured an engineer for each district who would have done the work at a reduced rate but who was deterred from entering the field because of the extent of the work as contemplated by the four projects. We do not say that this is not within the realm of possibility. All things are possible. But it is not within the realm of probability. Indeed, it is more probable that the engineering cost to each district was less because the engineering firm had the larger contract. The traveling expenses and overhead charges that necessarily entered into the engineering expense, in all probability, was reduced because of the method employed rather than the method suggested by counsel. The compensation of the engineering firm was

184          NEBRASKA REPORTS.     [Vol. 110

based upon a percentage cost of the improvement and each district bore its proper share and no more. Appellants' complaint on this basis is without substantial merit.

A number of complaints which we have not mentioned are contained in the brief but they are not found to be of such a character as to require specific discussion. No prejudicial error is found in the record and the judgment is

AFFIRMED.